IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:07-CV-37-RLV

| | |
|---|---|
| EMILY M. ARMSTRONG, a minor, ) <br> by and through her Guardian ad litem, ) <br> WILLIAM W. PLYLER,[1] WILLIAM E. ) <br> ARMSTRONG, AND SANDRA ) <br> ARMSTRONG, ) <br>     Plaintiffs / Counter-Defendants, ) <br> ) <br>          vs. ) <br> ) <br> LANIER M. CANSLER, in his ) <br> official capacity as secretary of the ) <br> North Carolina Department of Health ) <br> and Human Services,[2] ) <br>     Defendant / Counter-Plaintiff. ) <br> ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | Memorandum and Order |

**THIS MATTER** is before the Court on cross-motions for summary judgment and all related memoranda of law and exhibits offered in support and opposition. (Documents #25, #28.)

**I. Background**

This case arises out of the Complaint filed on March 23, 2007 on behalf of the minor child, Emily M. Armstrong. Plaintiff brings the action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief for the deprivation of her rights, as secured by 42 U.S.C. § 1396p (known as the "Federal Medicaid Anti-Lien Provision") and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. In the Complaint, Plaintiff requests a declaratory

---

[1] Effective October 2, 2009, William W. Plyler was appointed and substituted for Stephanie J. Gibbs as guardian ad litem for Emily Armstrong. (Document #24.)

[2] Effective January 28, 2009, Lanier M.. Cansler replaced the originally named Defendant, Carmen Hooker Odom, as Secretary of the North Carolina Department of Health and Human Services. (Document #14.)

1

judgment finding: 1) that Defendant does not have a lien on the proceeds arising from the minor child's personal injury action against James A. Barnes, Jr., M.D., Newton Women's Care, P.A., and Catawba Valley Medical Center ("the underlying action"); 2) that N.C. Gen. Stat. §§ 108A-57 and 108A-59 are unconstitutional to the extent that the statutes allow Defendant to assert a lien on compensation for damages other than medical expenses pursuant to the Supremacy Clause; and 3) that Defendant be enjoined from enforcing N.C. Gen. Stats. §§ 108A-57 and 108A-59 in a manner that violates 42 U.S.C. § 1396, *et seq.*, Arkansas Dep't of Health and Human Servs. v. Ahlborn, 547 U.S. 268 (2006), and the Equal Protection Clause of the Fourteenth Amendment.

On April 22, 2008, the Court heard oral argument on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion To Dismiss pursuant to Rule 12(b)(6) as to Plaintiff's Equal Protection claim. (Document #7.) By oral Order, the Court denied Defendant's Rule 12(b)(1) motion and granted its 12(b)(6) motion without prejudice. The Court also stayed all Rule 16 discovery obligations pending disposition in the North Carolina Supreme Court of the Andrews v. Haygood appeal. See Andrews v. Haygood, 655 S.E.2d 440 (N.C. Ct. App. 2008).

On May 1, 2008, Defendant filed its "Answer, Affirmative Defense, Counterclaim, and Motion to Dismiss." (Document #12.) Defendant asserts estoppel as its first affirmative defense, arguing that Plaintiff's current contention that North Carolina Department of Health and Human Services is not entitled to any of the recovered funds is inconsistent with her previous statements in the state court proceedings. In its counterclaim, Defendant seeks a declaratory judgment that N.C. Gen. Stats. §§ 108A-57 and 108A-59 are constitutional. Finally, Defendant's filing includes a Rule 12(b)(7) Motion to Dismiss for Plaintiff's failure to join her parents, who Defendant alleges are necessary and indispensable parties.

2

On January 13, 2009, Plaintiff filed a "Notice in Compliance with Court's Order," advising the Court of the North Carolina Supreme Court's decision in Andrews v. Haygood, 362 N.C. 599 (2008). (Document #13.) Accordingly, the Court issued an Order on June 1, 2009, lifting the stay on discovery obligations. (Document #15.) In the Order, the Court also referred the parties to Local Civil Rules 7.1(C)(1) and 16.1(D)[3], the effect of which was to direct the parties to proceed with an Initial Attorney's Conference, submit the Certification of Initial Attorney's Conference, and brief the central legal issue presented – cognizability of Plaintiff's claim in light of the Andrews decision.

On July 6, 2009, Plaintiff filed an Amended Complaint adding William E. Armstrong and Sandra Armstrong as Plaintiffs. (Document #19.)

On October 15, 2009, both parties moved for summary judgment, and these motions are now ripe for disposition by the Court.

**II. Standard of Review**

When faced with cross-motions for summary judgment, the court must apply the customary standard and review each motion separately on its own merits. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 241 (4th Cir. 1995); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). All permissible inferences to be drawn from the facts are to be viewed in the light most favorable to the party opposing the motion. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990); Matsushita, 475 U.S. at 587-88. However, where the record taken

---

[3] Pursuant to Local Civil Rule 7.1(C)(1): "Motions to dismiss contained in answers to complaints . . . are considered by the Court to be preserved. A party wishing to have decided any preserved motion shall file a separate motion and supporting brief." In addition, Local Civil Rule 16.1(D) explains as follows: "Rule 12 motions contained in an Answer, but not supported by a brief, act as placeholders and do not prevent joinder of the issues."

as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Miller, 906 F.2d at 974; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Whether a complaint states a cognizable claim is a legal question dependent on the applicable law, not an issue of fact upon which disagreement would prevent summary judgment. See Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978).

### III. Discussion

In filing cross-motions for summary judgment, the parties dispute the impact of two recent decisions on the North Carolina statutory scheme for Medicaid reimbursement. Plaintiffs contend that the holding of the Supreme Court of the United States in Arkansas Dep't. of Health and Human Servs. v. Ahlborn, 547 U.S. 268 (2006) is controlling on this matter. (Pl.'s Memo. Supp. Mot. for Summary Judg., 4.) According to Plaintiffs, the North Carolina statutes are inconsistent with federal law as interpreted in Ahlborn; thus, this Court should disregard the contrary decision of the North Carolina Supreme Court in Andrews v. Haygood, 362 N.C. 599 (2008). (Pl.'s Memo. Supp. Mot. for Summary Judg., 9.) On the other hand, Defendant maintains that the Court should give Andrews dispositive effect, holding that the Medicaid recovery statutes comport with Ahlborn, and as a consequence, grant Defendant's Motion for Summary Judgment. (Def.'s Memo. Supp. Mot. for Summary Judg., 8.)

Although the decision in Andrews is not binding on this Court, as Plaintiffs rightly assert, (Pl.'s Memo. Supp. Mot. for Summary Judg., 9) for the forthcoming reasons, the Court holds that the North Carolina Supreme Court was correct in determining that the North Carolina statutes are consistent with federal Medicaid law as construed in Ahlborn. See Andrews, 362 N.C. at 605. Therefore, Plaintiff's opposing claims are denied, and with no genuine issue of material fact remaining, Defendant is entitled to summary judgment.

In Ahlborn, the Supreme Court of the United States addressed a challenge to the Arkansas Medicaid reimbursement statute. 547 U.S. at 280. That statute permitted the Arkansas Department of Health and Human Services to recover "to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." Id. at 277. Ahlborn, a Medicaid recipient, appealed the statute because it did not limit reimbursement to ADHS to settlement proceeds stipulated as recovery for medical expenses. Id. at 274. Although the State had stipulated "that only $35, 581.47 of [the settlement] sum represent[ed] compensation for medical expenses," it asserted a lien for $215,645.30. Id. at 280. The Supreme Court rejected the State's claim of "absolute priority," id. at 288, and held that the Arkansas statute did not comport with federal law. Id. at 284. According to the Court, 42 U.S.C. §§ 1396a(a)(25) and 1396k(a) are exceptions to the federal anti-lien provision, authorizing the State "to demand as a condition of Medicaid eligibility that the recipient 'assign' in advance any payments that may constitute reimbursement for medical costs." Id. However, to the extent that the Arkansas statute allowed the State to impose a lien beyond the portion of the settlement allocated to medical care, it violated the anti-lien provision in § 1396p(a). Id.

Two years later, in Andrews, the North Carolina Supreme Court properly concluded that Ahlborn did not bar implementation of the North Carolina statutory scheme. 362 N.C. at 604. The court's decision was based on a determination that the Ahlborn holding was limited to a proscription against the State receiving reimbursement in excess of the portion expressly stipulated as recovery for medical expenses in a Medicaid recipient's settlement with a third-party. Id. at 603. In Ahlborn, the Supreme Court did not, however, require "a specific method for determining the portion of a settlement that represents the recovery of medical expenses." Id. Thus, the Andrews court inferred that a State may adopt a statutory method for making this determination in the absence of a prior judicial allocation. Id. N.C.G.S. § 108A-57(a) is designed to do precisely that in North Carolina,

5

by "defin[ing] 'the portion of the settlement that represents payment for medical expenses' as the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery." Id. at 604. By limiting the State's subrogation right to one-third of a Medicaid recipient's recovery, the scheme "protects plaintiffs' interests while promoting efficiency in Medicaid reimbursement cases throughout North Carolina." Id. Accordingly, the court upheld the law as a permissible framework within the federal Medicaid requirements. Id. at 605. On June 15, 2009, the plaintiff's petition for certiorari was denied by the Supreme Court of the United States. Brown v. N.C. Dep't of Health and Human Servs., 129 S. Ct. 2792 (2009).

In addition to the analysis in Andrews, this Court's independent examination of the North Carolina scheme governing Medicaid reimbursement reveals that Plaintiffs' argument of a conflict between the State's statutes and federal law is without merit. Under 42 U.S.C. § 1396a, funding from the federal Medicaid program is conditioned on the adoption of a state plan that conforms to specific federal requirements. Participating states are required to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan," and to "seek reimbursement for assistance to the extent of such legal liability." 42 U.S.C. §1396a(a)(25)(A)-(B). North Carolina has complied by enacting the State Plan for Medical Assistance, which includes an assignment statute, N.C.G.S. § 108A-59, and a subrogation statute, §108A-57. Implementation of a Medicaid recipient's statutory assignment is governed by N.C.G.S. §108A-57(a) which provides:

> Any attorney retained by the beneficiary of the assistance shall, out of the proceeds obtained on behalf of the beneficiary by settlement with . . . a third party . . . distribute to the Department the amount of assistance paid by the Department . . . but the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered.

Accordingly, in the absence of a judicial allocation,[4] North Carolina has determined that the State

---
[4] Ahlborn controls "when there has been a prior determination or stipulation as to the medical expense portion of a plaintiff's settlement. In those cases, the State may not receive

may only recover "the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery." Andrews, 362 N.C. at 604. The lesser of these two amounts essentially defines "the portion of the settlement that represents payment for medical expenses" in cases, such as this matter, involving a lump-sum settlement. Id. By preventing the State from obtaining more than this portion of a Medicaid recipient's settlement, regardless of whether the State in fact provided more assistance, the North Carolina statute avoids the conflict at issue in Ahlborn. The Arkansas reimbursement statute violated the federal anti-lien provision because it permitted the State to impose a lien beyond the portion of a settlement allocated to medical care. Ahlborn, 547 U.S. at 284. Meanwhile, N.C.G.S. § 108A-57(a) provides a means of calculating that portion, and then forbids the State from imposing a lien on the remainder of the settlement.

Moreover, the North Carolina scheme alleviates another critical concern expressed by the Supreme Court in Ahlborn regarding Medicaid reimbursement. In reviewing the previous Arkansas system, the Supreme Court was particularly disconcerted by the absence of a limit on the State's recovery. See Ahlborn, 547 U.S. at 278. Thus, if the State had provided substantial assistance to a Medicaid recipient, beyond the amount the individual obtained in a third-party settlement, ADHS could recover the entire settlement and leave the plaintiff with nothing. Id. On the other hand, N.C.G.S. § 108A-57(a) prevents a Medicaid recipient from incurring such a hardship in the North Carolina system. Section 108A-57(a) "allows total reimbursement to the State only when 'the amount of assistance' previously paid for medical expenses is one-third of the plaintiff's settlement

---

reimbursement in excess of the portion so designated." Andrews, 362 N.C. at 603. This Court is addressing the question of whether the State may adopt a statutory method for making that determination in cases lacking a prior judicial allocation. It appears clear that the State may do so, "[n]onetheless, plaintiffs are free to negotiate a settlement with the State for a lien amount less than that required by [the] statutes." Id. at 604.

or less." Andrews, 362 N.C. at 604. Accordingly, there is no concern of "excessive depletion of a plaintiff's recovery to satisfy the State's reimbursement lien." Id. The one-third ceiling is a fair balance, "providing a reasonable method for determining the State's medical reimbursements, which it is required to seek in accordance with federal Medicaid law," while also protecting the recipient's interests. Id.

For similar reasons, courts have recently upheld Florida's nearly identical Medicaid reimbursement statute as comporting with federal law. See e.g., Russell v. Agency for Health Care Admin., 23 So.3d 1266 (Fla. 2d DCA 2010); Scharba v. Everett L. Braden, Ltd., 2010 U.S. Dist. LEXIS 40200 (M.D. Fla. Mar. 31, 2010). The Second District Court of Appeal of Florida determined, as the North Carolina Supreme Court did, that "[c]entral to the Ahlborn court's reasoning was the state's stipulation concerning the portion of the settlement attributable to medical expenses." Russell, 23 So.3d at 1268. Under Ahlborn, the State may not impose a lien beyond that portion in cases in which an allocation is expressly stipulated; however, the Second District Court of Appeal held that where the parties to a settlement have not agreed on an allocation for recovery of medical costs, Florida's statutory fifty-percent rule governs. In those cases, the State recovers the lesser amount of the past Medicaid assistance provided to the plaintiff or one-half of the plaintiff's total settlement. See id at 1267-69 (affirming that Ahlborn did not apply, and upholding Florida's fifty-percent allocation statute as a permissible framework under federal Medicaid law).

The persuasive reasoning employed by the Florida courts simply provides further support for this Court's judgment regarding North Carolina's statutory scheme. The only distinguishing fact from the Florida law in the North Carolina statute is that the State's reimbursement is capped at a lower percentage of a recipient's recovery. N.C.G.S. § 108A-57(a) provides a more conservative

assessment of medical costs in the absence of judicial allocation, rendering it actually more protective of plaintiffs than the Florida statute recently affirmed as consistent with Ahlborn.

For the foregoing reasons, the Court concludes that the North Carolina Medicaid recovery statutes, §§ 108A-57 and 108A-59, comport with federal law as interpreted in Ahlborn. If a Medicaid recipient in North Carolina obtains a third-party lump-sum settlement, which does not allocate a specific portion to recovery for medical costs, § 108A-57(a) controls. Accordingly, the State will be reimbursed "the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery." Andrews, 362 N.C. at 604. The Supreme Court acknowledged in Ahlborn that "some States have adopted special rules and procedures for allocating tort settlements" under certain circumstances, and "le[ft] open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation." 547 U.S. at 288, n.18. North Carolina has adopted such a statutory scheme, which provides a reasonable method for ascertaining the State's medical reimbursements, while still protecting the interests of Medicaid recipients, including the Plaintiffs in this matter. The Court agrees with the decision of the Andrews court that §§ 108-57 and 108A-59 are consistent with federal law, and consequently, the Court rejects Plaintiff's contention that the statutes are not controlling in this matter. See Tristani v. Richman, 609 F. Supp. 2d 423, 464-65 (W.D. Pa. 2009) (concluding that "[a] close reading of Ahlborn confirms the correctness of the reasoning employed by . . . the North Carolina Supreme Court"). Therefore, Defendant is entitled to summary judgment.

IV. Order

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **DENIED**. Defendant's Motion for Summary Judgment is hereby **GRANTED**. Accordingly, Plaintiff's cause of action is dismissed with prejudice.

Signed: June 28, 2010

Richard L. Voorhees
United States District Judge